# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY ESTOCK, an individual,                    ) | CIVIL DIVISION |
| )                                                                  | C.A. No.: # |
| Plaintiff                    )                                  | |
| )                                                                  | |
| v.                             )                                  | |
| )                                                                  | |
| LIFE INSURANCE COMPANY        )         | |
| OF NORTH AMERICA, a corporation, ) | |
| )                                                                  | |
| Defendant.             )                                  | |
| )                                                                  | **COMPLAINT** |
| )                                                                  | |
| )                                                                  | Filed on behalf of: |
| )                                                                  | Plaintiff Mary Estock |
| )                                                                  | |
| )                                                                  | Counsel of Record for this Party: |
| )                                                                  | |
| )                                                                  | Joseph R. Bock, Esq. |
| )                                                                  | PA I.D. #35729 |
| )                                                                  | 1547 Alaqua Drive |
| )                                                                  | Sewickley, PA 15143 |
| )                                                                  | (724) 934-9300 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY ESTOCK, an individual, ) | CIVIL DIVISION |
| ) | C.A. No.: # |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| LIFE INSURANCE COMPANY ) | |
| OF NORTH AMERICA, a corporation, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

NOW COMES the Plaintiff, Mary Estock, an individual, by and through her attorney, Joseph R. Bock, Esq., and pursuant to Federal Rules of Civil Procedure 3, 7(a), et. seq., files the within Complaint upon the following cause of action:

## COUNT I
## ERISA CLAIM PURSUANT TO ERISA'S CIVIL ENFORCEMENT PROVISION §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).

1. Plaintiff Mary Estock (hereinafter "Plaintiff" or "Plaintiff Estock") is an individual, a citizen of the Commonwealth of Pennsylvania, and resides therein at 408 East Fairfield Avenue, New Castle (Lawrence County), PA 16105.

2. Defendant Life Insurance Company of North America (hereinafter "Defendant", "Defendant Insurer", or "Defendant LINA"), is a subsidiary of Cigna Group Insurance Company, a Delaware corporation organized and incorporated under the laws of the state of Delaware in

a Delaware corporation organized and incorporated under the laws of the state of Delaware in 1981. Defendant's principal place of business and its address for purposes of service is 2 Liberty Place, 1601 Chestnut Street, Philadelphia, PA 19192.

3. At all times relevant hereto, Defendant LINA was the claims administrator of the welfare benefit plan of Mercy Health, previously designated as Catholic Health Partners.

4. Plaintiff Estock was an employee of Mercy Health since 2014. Plaintiff worked at a member hospital of Mercy Health from 2014 through August 3, 2015 as a registered nurse on the cardiac floor; her position was also known as "telemetry nurse." The job duties she regularly performed involved providing direct individualized nursing care to patients, coordinating patient care plans with health care team members, preparing and administering IV medications, preparing equipment and aids for physicians' use during treatment of a patient, and responding to life saving situations based upon nursing standards and protocol. Those duties required her to have the ability to quickly respond to situations, perform required administrative duties, develop, organize and prioritize plans to accomplish one's own work, interact with computers, control machines and processes, and adjust, regulate and calibrate machines. The job's physical demands require considerable time walking, bending, stretching and standing; frequently lifting or moving up to twenty (20) pounds; and occasionally lifting or transferring patients which may involve assisting with weights of more than one hundred (100) pounds.

5. Mercy Health provided an employer-sponsored benefit plan for its employees which included health insurance coverage and long-term disability benefit coverage. At the time

provide said coverage. (See, attached hereto and marked Exhibit "A", LINA-Mercy Health Group Disability Contract).

6. The present action is a civil action founded upon claims or rights arising under the Constitution, laws or treaties of the United States. See, Metropolitan Life Insurance Company v. Taylor, 481 U.S. 58, 66 (1987). This court has original jurisdiction of this action under the provisions of 28 U.S.C. §1331, and ERISA §502(e), 29 U.S.C. §1132(e).

7. For several years prior to August 3, 2015, Plaintiff complained of lower back pain and pain down both legs. Throughout the first half of 2015, Plaintiff's condition worsened dramatically. She had changes in bowel and bladder control, had difficulty straightening back up from a bending position, and had constant pain in her lower back which was aggravated with standing, walking, lifting, or driving long distances. Plaintiff was referred to neurosurgeon Mark R. Grubb, M.D., whom she saw for the first time on August 11, 2015. Plaintiff discussed with Dr. Grubb the options of continued non-operative care versus possible surgical intervention, and on October 9, 2015, Plaintiff underwent a posterior lumbar interbody fusion, L5-S1; lumbar decompression L5 on the left; and open reduction of spondylolisthesis L5-S1. On January 5, 2016, Plaintiff provided Defendant with notice of her assertion of a claim for long-term disability benefits, and a claim was established with LINA at incident #3876027.

8. On and after Plaintiff's disability commenced on August 3, 2015, Plaintiff was a Mercy Health employee entitled to all employer-sponsored benefits for which she was eligible pursuant to Mercy Health's group insurance contract with Defendant. Plaintiff believes, and

pursuant to Mercy Health's group insurance contract with Defendant. Plaintiff believes, and therefore avers, that the group policy under which she was insured was Group Policy No. #FLK-980167. Said policy was, at all times relevant hereto, in full force and effect.

9. Plaintiff provided Defendant Insurer with notice of her assertion of a claim for long-term disability benefits ("Report of Claim"), and also submitted a Disability Questionnaire & Activities of Daily Living form on January 14, 2016. On February 4, 2016, Plaintiff received notice from Defendant that a review of her claim for long-term disability benefits had been completed, and that it had been determined that her claim would be denied. (See, attached hereto and marked Exhibit "B", Defendant's February 4, 2016 denial notice). According to Defendant's denial notice, Plaintiff had advised Defendant that she was unable to work in her regular occupation due to a "lumbar sprain." (See, Exhibit "B", p. 2). Defendant concluded that based upon its review of the information on file, and based upon a review of the claim with its nurse case manager and associate medical director, "there is no current objective documentation for a significant functional impairment that would prevent (Plaintiff) from returning to your own occupation."

10. The group disability contract between Mercy Health and Defendant LINA defines "disabled" or "disability" as follows:

"The employee is considered disabled if, solely because of injury or sickness, he or she is:

1. unable to perform the material duties of his or her regular occupation; and
2. unable to earn eighty percent (80%) or more of his or her indexed earnings from working in his or her regular occupation."

11.     The group disability contract also provides that "after disability benefits have been payable for twenty-four (24) months, the employee is considered disabled if, solely due to injury or sickness, he or she is unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and unable to earn sixty percent (60%) or more of his or her indexed earnings."

12.     On March 29, 2016, Plaintiff Estock filed her first level appeal, pro se, of Defendant LINA's February 4, 2016 disability determination. (See, attached hereto and marked Exhibit "C", Plaintiff's March 29, 2016 pro se appeal). On June 7, 2016, Defendant Insurer upheld its original determination denying Plaintiff's claim for LTD benefits, and denied Plaintiff's first level appeal. (See, attached hereto and marked Exhibit "D", Defendant's June 17, 2016 denial of appeal). Defendant LINA's decision stated that its medical reviewer "indicated that you were out of work due to a lumbar sprain" and "further opined that there (was no) medically acceptable clinical diagnostic techniques and records were inconsistent…to support that you were unable to work in any capacity at any time from August 4, 2015 and ongoing with the exception of the eight (8) weeks immediately following the lumbar fusion procedure from October 9, 2015." (See, Exhibit "D", p. 2).

13.     Subsequent to her receipt of Defendant LINA's June 17, 2016 Decision denying her first level appeal, Plaintiff Estock retained counsel for purposes of preparing and filing a second level administrative appeal. On December 13, 2016, Plaintiff's counsel filed an appeal of Defendant LINA's June 27, 2016 Decision (See, attached hereto and marked Exhibit "E", Plaintiff's December 13, 2016 second level administrative appeal).

14. Plaintiff Estock's December 13, 2016 appeal letter detailed the objective diagnostic testing and clinical examination findings of Plaintiff's treating physicians underlying their conclusion that Plaintiff met the contract definition of disability. A July 17, 2015 lumbar spine MRI revealed "grade II anterolisthesis at L5-S1; severe L5-S1 spinal stenosis; bilateral severe L5-S1 neural foraminal narrowing; annular tear at L3-4; and degenerative end plate changes at L5-S1." Postoperatively, Plaintiff's treating neurosurgeon Mark R. Grubb, M.D. completed a January 14, 2016 Physical Ability Assessment and concluded on the basis of clinical findings that Plaintiff was capable of standing, walking and lifting up to twenty (20) pounds only occasionally (about one-third [1/3] of the day).

On April 5, 2016, Dr. Grubb completed a second Physical Ability Assessment, placed additional limitations on Plaintiff's ability to work, and concluded that her symptoms would interfere with her ability to do her job from one-third (1/3) to one-half (1/2) of the time. On March 28, 2016, Plaintiff began treating with John Wrightson, M.D., a pain management doctor. Dr. Wrightson diagnosed the Plaintiff with "post laminectomy syndrome of lumbar region" and "chronic pain syndrome." He listed prolonged standing and walking as aggravating factors in Plaintiff's condition.

15. Plaintiff's December 13, 2016 second level appeal examined the medical reviews of Defendant LINA's retained experts upon which Defendant relied. That appeal pointed out that none of Defendant's experts ever personally examined the Plaintiff, that Defendant retained an internist, Shadrach Jones, IV, M.D. to assess the opinions of Plaintiff's treating neurosurgeon, and that R. Norton Hall, M.D., another of Defendant's experts, relied upon Plaintiff's reported ability

to cook, use the computer, and walk for ten to fifteen (10-15) minutes three (3) times per week as proof of her lack of any functional limitations.

16. Plaintiff's second level appeal examined the material duties of Plaintiff's regular occupation as a registered nurse (RN), as derived from the employer's job description for the telemetry nurse position (See, attached hereto and marked Exhibit "F"), and from the U.S. Department of Labor's Dictionary of Occupational Titles (DOT) job description of the position (See, attached hereto and marked Exhibit "G"). The Department of Labor's DOT rates the registered nurse (RN) position as falling within the medium duty classification, defined as exerting up to fifty (50) pounds of force occasionally, requiring the ability to have quick reaction time when necessary, and to possess trunk strength ("the ability to use one's lower back muscles to support the body repeatedly or continuously over time without giving out or fatiguing"). The employer's job description of the telemetry nurse position includes as responsibilities and physical demands of the position – to respond to life-saving situations based upon nursing standards and protocol, and the ability to move or transfer patients and assist with weights of more than (100) pounds.

17. The evidence is overwhelming as to Plaintiff's Estock's inability to perform the material duties of her regular occupation of registered nurse/telemetry nurse after August 3, 2015. Regardless, on or about February 2, 2017, Defendant Insurer directed a letter to Plaintiff's counsel (See, attached hereto and marked Exhibit "H", Defendant's February 2, 2017 letter) indicating Defendant "was not able to accept (Plaintiff's) request for an appeal as no new medical documentation to support (Plaintiff's) disability was submitted." Accordingly, Plaintiff's counsel submitted a March 14, 2017 letter (See, attached hereto and marked Exhibit "I", March 14, 2017

letter of Plaintiff's counsel) and enclosed a February 27, 2017 functional capacity evaluation of John Wrightson, M.D. Dr. Wrightson's FCE concluded on the basis of objective positive exam findings, that Plaintiff was "totally incapacitated." Again, by Decision dated March 16, 2017 (See, attached hereto and marked Exhibit "J", March 16, 2016 Decision of Defendant LINA), Defendant rejected the evidence submitted by Plaintiff's treating physician, stating "we are not able to accept your request for an appeal as you have submitted a partial FCE dated February 27, 2017 to support your client's disability with a period in question that is from August, 2015." Therefore, with Defendant's March 16, 2017 rejection of Defendant's second level appeal, Plaintiff Estock exhausted all available administrative remedies prior to the filing of the instant action.

18.  Plaintiff believes, and therefore avers, that her claim for long-term disability benefits was denied by Defendant Insurer despite her clear entitlement to same and her total disability. Since August 3, 2015, Plaintiff has been totally disabled as that term is defined by the plan document and the contract of insurance. Plaintiff has been continuously unable to perform each of the material duties of her regular job and has required the regular care and maintenance of medical doctors. Moreover, since August 3, 2015, Plaintiff has been completely and continuously unable to perform the duties of any gainful work or service for which she is reasonably qualified. Plaintiff contends that Defendant's benefit denial constitutes an arbitrary and capricious disregard of competent evidence.

19.  ERISA's civil enforcement provision, §502(a) (1)(B), 29 U.S.C. §1132(a) (1)(B), permits a plan participant or beneficiary to recover benefits due him or her under the terms of his or her plan.

20. 29 U.S.C. §1132(d)(1) permits an employee benefit plan to be sued as a legal entity, and authorizes service of legal process upon a trustee or administrator of the plan. Subsection (e)(1) of 29 U.S.C. §1132 vests concurrent jurisdiction of actions brought under subsection 502(a)(1)(B) in the district courts of the United States and in state courts of competent jurisdiction.

21. Subsection (g) of 29 U.S.C. §1132 provides that a Court in its discretion may allow a reasonable attorney's fee and costs of the action to a party.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant Life Insurance Company of North America in an amount exceeding $75,000.00, representing contractual damages, court costs, and attorney's fees as permitted by law.

Respectfully submitted,
By:

_____
Joseph R. Bock, Esq.
PA ID #35729
1547 Alaqua Drive
Sewickley, PA 15143
(724) 934-9300
Attorney for Plaintiff